**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PATRICK COLLINS, INC.,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No.: 2:12-cv-13670-TLL-CEB
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JOHN DOES 1-28,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀)
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JOHN DOE 26'S MOTION TO
SEVER DOE DEFENDANT'S 2-28 AND TO QUASH SUBPOENA AND/OR DISMISS**

## I.⠀⠀INTRODUCTION

Plaintiff respectfully requests this Court deny Defendant's Motion because joinder is proper and Plaintiff has a proper purpose.  "[T]his case involves a copyright owner's effort to protect a copyrighted work from unknown individuals, who are allegedly illegally copying and distributing the work on the Internet."  *AF Holdings LLC v. Does 1-1,058*, CIV.A. 12-0048 BAH, 2012 WL 3204917 (D.D.C. Aug. 6, 2012).  Accordingly, Plaintiff brings this suit to protect the product it has created using much time, effort, and financial resources.

As an initial point, Defendant's Motion is based significantly on attacks to Plaintiff which are entirely unsubstantiated.  "The only argument remaining—that copyright infringement suits of this sort are baseless 'fishing expeditions' used solely to extort money from alleged infringers—amounts to nothing more than an *ad hominem* attack on the Plaintiff. This line of argument fails to persuade."  *AF Holdings, LLC v. Does 1-162*, 11-23036-CIV, 2012 WL 488217 at *1 (S.D. Fla. Feb. 14, 2012).  As this Court has correctly noted, relying on vague assertions of improper conduct in other cases is not a proper reason to quash the subpoena or sever the Defendants.

1

> [W]hile Defendant claims that this suit was brought only to scare up settlements (Def.'s Mot. to Sever at 2, 11), Defendant has offered no case-specific facts supporting this claim. Rather, Defendant relies on the conduct of adult-film companies in other cases. This guilt-by-association argument does not justify quashing the subpoena that this Plaintiff, Third Degree Films, served on Defendant's ISP pursuant to an Order entered by Judge Murphy allowing this discovery.

*Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. 2012). Undersigned and Plaintiff have always responded to every motion in this District and have never voluntarily dismissed and re-filed purposefully against a Doe Defendant seeking severance. Recently, the Honorable Judge Michelson denied an almost identical motion filed by defense counsel in a similar case.   *See Malibu Media, LLC v. John Does 1-28*, 4:12-cv-12598 (E.D. Mich. Oct 31, 2012) (Exhibit A).

This Court has also issued three separate opinions holding that joinder is proper in BitTorrent copyright infringement actions and that motions to quash should be denied.  *See Nu Corp, Inc. v. John Does,* 1-24, 2:11-cv-15222-BAF-PJK (E.D. Mich. Oct. 18, 2012); *Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012); *Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161 (E.D. Mich. 2012) ("[I]t is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).")

Both Congress and the United States Copyright Office have made it clear that the suits Plaintiff brings against individual infringers are proper.  In 1999 Congress intentionally amended the Copyright Act to deter individuals from infringing copyrights on the internet by increasing the statutory remedies:

  Congress did contemplate that suits like this [against individuals] were within

the Act. Congress last amended the Copyright Act in 1999 <u>to increase the minimum and maximum awards</u> available under § 504(c). See Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, Pub. L. No. 106-160, 113 Stat. 1774. At the time, Congress specifically acknowledged that <u>consumer-based, noncommercial use of copyrighted materials constituted actionable copyright infringement.</u> Congress found that "copyright piracy of intellectual property flourishes, assisted in large part by today's world of advanced technologies," and cautioned that "the potential for this problem to worsen is great."

*Sony v. Tennenbaum*, 2011 WL 4133920 at *11 (1st Cir. 2011) (emphasis added).

During her time as Register of Copyrights, Mary Beth Peters gave a statement to the Senate Judiciary Committee on exactly the type of copyright infringement claims that are before this Court, highlighting the necessity for copyright holders to bring these actions.

> [F]or some users of peer-to-peer technology, even knowledge that what they are doing is illegal will not be a sufficient disincentive to engage in such conduct. But whether or not these infringers know or care that it is against the law, the knowledge that such conduct may lead to expensive and burdensome litigation and a potentially large judgment should have a healthy deterrent effect. ... For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences. <u>Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services.</u>[1] (Emphasis added.)

Defendant attempts to persuade this Court to sever the defendants and quash the subpoena on the grounds that Plaintiff brings these suits with an improper purpose. Plaintiff's purpose is plain and simple: to deter future infringement, preserve its valuable copyright, and receive compensation for the mass theft of its property.

---

[1] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at</u> http://www.copyright.gov/docs/regstat090903.html

## II.   ADULT FILM CONTENT IS COPYRIGHTABLE

Defendant attempts to call into question the copyrightability of Plaintiff's works. Defendant argues this Court should sever on the basis it may reject Plaintiff's legally protected copyright.   Any such holding would be devastating to copyright holders and contrary to established law.   The Fifth Circuit expressly held Congress intended for works containing obscenity to be protected under copyright law:

> It appears to us that Congress has concluded that the constitutional purpose of its copyright power, '(t)o promote the Progress of Science and useful Arts,'U.S.Const. art. 1, s 8, cl. 8, is best served by allowing all creative works (in a copyrightable format) to be accorded copyright protection regardless of subject matter or content, trusting to the public taste to reward creators of useful works and to deny creators of useless works any reward.

*Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F. 2d 852, 855 (5th Cir. 1979) (emphasis added).

"Denying copyright protection to works adjudged obscene by the standards of one era would frequently result in lack of copyright protection (and thus lack of financial incentive to create) for works that later generations might consider to be not only non-obscene but even of great literary merit."   *Id.* at 857.   Congress carefully determined what should and should not be copyrightable, leaving no room for moral considerations.   "[I]t is evident to us that it is inappropriate for a court, in the absence of some guidance or authorization from the legislature, to interpose its moral views between an author and his willing audience." *Id.* at 861.

4

## III.  PLAINTIFF DOES NOT OBJECT TO DEFENDANT PROCEEDING ANONYMOUSLY

Plaintiff does not object to a protective order that would enable Defendant to proceed anonymously and prevent Plaintiff from publically naming Defendant until after discovery is conducted.  Further, Plaintiff has no intention or desire to use the information provided in the subpoena response for any reason other than to enforce its rights as set forth in the complaint.  Plaintiff's goal is not embarrass the Defendants or force any unwarranted settlements.  Plaintiff simply seeks redress for the massive infringements it experiences daily and to be made whole for the significant loss it has suffered.

## IV.  JOINDER IS PROPER

Throughout this year, in a series of decisions, Courts across the country have developed a rule permitting joinder in BitTorrent cases where, as here, (1) the complaint clearly explains how BitTorrent works through a series of transactions, (2) all of the defendants live in the district (eliminating long-arm issues and venue), (3) all of the defendants were part of the exact same swarm of peer infringers as evidenced by a unique cryptographic hash value,[2] and (4) Plaintiff pled that the Defendants are joint and severally liable for each others' infringement.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal

---

[2]As alleged in the Complaint, Plaintiff's movies were processed by a BitTorrent Client, (a BitTorrent software program) which generated a torrent file.  All 15 of the infringed works were combined together into one single torrent file.  Plaintiff's investigators use the hash value of the torrent file as a digital fingerprint that enables Plaintiff to ensure that all of the infringements alleged in this suit arise from the exact same unique copy of Plaintiff's movie as evidenced by the cryptographic hash value.  Significantly, many of Plaintiff's movies have been initially seeded several times.  Each seeding produces its own independent swarm.   Here, Plaintiff has only sued Defendants in the exact same swarm.

joinder procedures." *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1094 (2d Cir. 1992) (*quoting* 6A Wright, Miller & Kane § 1581). In light of this idea, the Southern District of New York recently found joinder proper noting that "the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same 'series of transactions or occurrences.'" *Malibu Media, LLC v. John Does 1-5*, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012).

    A.    <u>The Infringement Occurred Through a Series of Transactions</u>

"'[T]ransaction or occurrence' "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *State Farm Fire & Cas. Co. v. Allied & Associates*, 11-10710, 2012 WL 917814 (E.D. Mich. Mar. 19, 2012).

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to be proper when there is something other than a direct transaction. The tests set forth in the cases cited by Defendant do not do so and are inconsistent with the rule. "Series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974).

A direct Defendant to Defendant transaction (or the Defendants "acting in concert") is not necessary to satisfy the liberal joinder requirements.

> Defendants may be joined in a single action only if the two independent requirements of Rule 20 are satisfied: (1) the claims against them must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants." Fed.R.Civ.P. 20(a)(2). <u>Rule 20 clearly contemplates</u>

joinder of claims arising from a "series of transactions or occurrences"—a single transaction is not required.

*In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) (Emphasis added).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different but for each of the Defendants' infringements.

   i.   Series of Transactions Explained By the Eastern District of Michigan

Recently, Judge Michelson, Judge Randon, and Judge Komives properly analyzed the facts in near identical cases, expanding substantial effort to understand the allegations in the complaint and the applicable law.   Judge Randon's Report and Recommendation has been accepted by District Court Judge Denise Page Hood.   *See Patrick Collins, Inc. v. John Does 1-21*, 11-15232, 2012 WL 4498373 (E.D. Mich. 2012).

Judge Randon summarized Plaintiff's allegation asserting that each Defendant copied the same piece of the same file as follows:

> Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie.
> By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

*Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 162 (E.D. Mich. 2012)  Significantly, Judge Randon then explained through the force of clear deductive logic that each Defendant obtained the piece of Plaintiff's movie in one of four ways all of which relate directly back to one individual seed.

> If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:
>
> 1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or
>
> 2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or
>
> 3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or
>
> 4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.
>
> In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

*Id.*  Having limited the universe to four possibilities the Court correctly concluded the transaction was logically related.

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

*Id.*

The Honorable Judge Michelson further addressed the issues of BitTorrent infringement and joinder, determining that "the question in this case is whether Plaintiff has sufficiently pled that each defendant's act of infringement—downloading and uploading pieces of a digital version of the Work—share 'an aggregate of operative facts' or, restated, whether Plaintiff has sufficiently pled 'shared, overlapping facts" giving rise to the claim of infringement against each of the defendants.'" *Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. 2012).

"By undoubtedly uploading to other peers in the swarm, which enabled those peers to upload to still other peers, all 36 Doe Defendants jointly contributed to either growing the swarm or maintaining its existence." *Id.* "Unlike traditional peer-to-peer networks, which broker a 1–to–1 connection between an uploader and a downloader, a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, and where a group of uploaders collaborate to speed the completion of each download of the file." *Id.* citing *Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F.Supp.2d 444, 451 (D.Mass.2011). "[T]he Court believes that Plaintiff has, at this early stage of the litigation, sufficiently pled that there are shared, overlapping facts that give rise to the claims of infringement against each defendant." *Id.* at *7.

      ii.   <u>The Time Period For Infringement</u>

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the file containing the movies long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer likely will seed and distribute a file for an extended period of time. As Judge Randon explained the technology, even after an infringer has completed a download of the movies, he or she may distribute the movies for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

*Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012). Here, Plaintiff's investigator received a piece of the file containing the movies from the defendants when they were allegedly distributing it to others.

The court further explained that time constraints should not impact that the infringements occurred through a series of transactions. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." *Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012). "[I]t is important to consider that while a peer directly uploads to only a small number of peers, those peers in turn upload pieces to other peers that later join the swarm. Thus, a defendant's "generation" of peers—peers that a defendant likely directly uploaded to—helped pass on pieces of the Work to the next "generation" of active peers." *Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. 2012).

    a.    <u>Other Courts Have Held the Time Frame in BitTorrent Actions is Irrelevant</u>

Recently, the Southern District of New York agreed with this Court, noting "[t]he length of time over which defendants are alleged to have participated in the swarm—eighty-eight days-does not undermine the interrelated nature of their actions. 'The law of joinder does not have as a precondition that there be temporal distance or temporal overlap ....'" *Malibu Media, LLC v. John Does 1-5*, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. 2012).

The Northern District of California has also explained why the time gap in BitTorrent infringement cases does not impact the basic principles of joinder. "While this period might seem protracted, such time periods can be somewhat arbitrary in BitTorrent-based cases as long as the alleged defendants participate in the same swarm, downloading and uploading the same file." *First Time Videos, LLC v. Does 1-95*, C 11-3822 MEJ, 2011 WL 4724882 (N.D. Cal. Oct. 7, 2011). "[E]ven after a Doe Defendant disconnects from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm." *Id.*

Further, the District Court of Maryland held that in a BitTorrent infringement case joinder was proper despite the time gap between the infringements.

> Although the downloads in this case occurred over a span of six weeks, suggesting that the Does were not downloading the copyrighted movie at the exact same time, <u>Plaintiff has adequately alleged that each download directly facilitated the others in such a way that the entire series of transactions would have been different but for each of Defendants' infringements.</u> As such, Plaintiff has sufficiently shown a logical relationship between the series of individual downloads.

*K-Beech, Inc. v. Does 1-31*, 12-CV-00088-AW, 2012 WL 1431652 (D. Md. Apr. 24, 2012) (emphasis added).

### iii. The Supreme Court Takes a Liberal Approach to Joinder

"In construing the Federal Rules of Civil Procedure, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.' The purpose of Rule 20(a) is to address the 'broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

11

In *United States v. Mississippi*, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact. *Id.* at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

*Id.* at 142. Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the defendants to have directly interacted with each other defendant, or have shared a piece of the file with each and every defendant when downloading the movies. The defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. In doing so, the Defendants all acted under the same exact system. Here, the defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

12

B.  There Are Common Issues of Fact and Law

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact.  *See Nu Image, Inc. v. Does 1-3,932*, 2:11-CV-545-FTM-29, 2012 WL 1890854 (M.D. Fla. May 10, 2012).  "The Plaintiff meets this requirement.  In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders."  *Id.*  "The Court finds that Plaintiff has adequately pled facts satisfying Rule 20(a)(2)(B). Plaintiff has alleged the same legal causes of action involving the same digital file against each of the defendants.  Plaintiff has also alleged that the same investigation led to the discovery of the IP addresses allegedly associated with Defendants."  *Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012)

C.   Joinder is Proper Because Plaintiff Properly Pled Defendants Were Jointly and Severally Liable

Here, joinder is also proper because Plaintiff pled that the defendants are jointly and severally liable.  *See Genetic Technologies Ltd. v. Agilent Technologies, Inc.*, 11-CV-01389-WJM-KLM, 2012 WL 1060040 (D. Colo. Mar. 28, 2012) ("It is uncontested that Plaintiff does not assert joint or several liability here, which would be a separate basis for joinder.")

Rule 20(a) provides for "any right to relief jointly, severally, or in the alternative".  In this case Plaintiff pled both joint and several liability.

> **Relief May be Sought "**Jointly, Severally, or in the Alternative**":** It is *not* necessary that each plaintiff or defendant be involved in every claim set forth in the complaint. Thus, for example, if there are several plaintiffs (e.g., driver and passenger in auto accident), each may seek *separate* relief. Likewise, if there are several defendants, relief may be sought against each of them separately, or against all of them jointly. [FRCP 20(a); *Dougherty v. Mieczkowski* (D DE 1987) 661 F.Supp. 267, 278]

13

Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 7-D. "[C]oncert of action, *i.e.*, a right to relief jointly, is not a precondition of joinder. Plaintiff asserts a right to relief jointly against Defendants *and* severally. Therefore, the first clause of Rule 20(a)(2)(A) is satisfied by the assertion of a right severally." *Patrick Collins, Inc. v. John Does 1-21*, CIV.A. 11-15232, 2012 WL 1190840, at *8 (E.D. Mich. Apr. 5, 2012).

> A right to relief against defendants jointly requires concerted action by two or more parties. A right to relief severally against defendants means that each right to relief is separate and distinct from defendant to defendant and no interaction among the defendants is required. An 'alternative' right to relief may be asserted when plaintiff knows one of the defendants is liable, but does not know which one. 4 Moore's Federal Practice § 20.03. Plaintiff asserts a right to relief against Defendants jointly and a right to relief severally; however, a right to relief against the Defendants severally alone is sufficient to satisfy the first clause of Rule 20.

*Id.* (Emphasis added).

D.   Joinder Promotes Judicial Efficiency and Doe Defendants Cannot Demonstrate Prejudice At This Stage

Joinder "is a procedural rule based on convenience" to "avoid multiple lawsuits." *Independent Liberty Life Ins. Co. v. Fiduciary and General Corp.*, 91 F.R.D. 535, 537 (W.D. Mich. Sept. 11, 1981) ("In this era of congested court calendars, best efforts should be made to comply with the premier procedural rule, to secure the 'just, speedy and inexpensive determination of every action.'") Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation process and will not prejudice any party. "The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency." *Patrick Collins, Inc. v. John Does 1-33*, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012).

The Southern District of New York has also addressed this issue stating, "courts have opined that requiring aggrieved parties to file hundreds or even thousands of

14

separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts." *Digital Sin, Inc. v. Does 1-176*, 2012 WL 263491, *FN 6 (S.D.N.Y. 2012).

The District of Columbia has also found joinder to be beneficial in BitTorrent copyright infringement cases. The court held that defendants would potentially benefit from joinder because they could see the defenses of others.

> [J]oinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants. *See London–Sire Records, Inc. v. Doe 1,* 542 F.Supp.2d 153, 161 (D.Mass.2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider. <u>Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.</u>"

*Call of the Wild Movie, LLC v. Does 1-1,062,* 770 F. Supp. 2d 332, 344 (D.D.C. 2011) (Emphasis added). The court further acknowledged that if the cases were severed, Plaintiff may not be able to bring its claim against the Defendants. "If the Court were to consider severance at this juncture, plaintiffs would face significant obstacles in their efforts to protect their copyrights from illegal file-sharers and this would only needlessly delay their cases." *Id.*

E. Many of the Cases Relied Upon By Defendant Have Been Distinguished In Such A Way As Would Make Joinder Proper Here

Defendant cites various cases in an effort to avoid joinder. Many of Defendant's cases rely heavily on unpublished orders from cases litigated by another law firm Steele Hansmeier with whom neither Plaintiff nor undersigned have any relationship. Joinder was held improper in several of Mr. Steele's early cases because these cases were either formed incorrectly (plaintiff failed to use geolocation software to ensure that jurisdiction and venue are correct) or

because plaintiff incorrectly combined multiple movies or swarms into one case.  This case does not suffer from any of those infirmities.

Some of the cases cited by Defendant, unlike this case, involve multiple Plaintiffs and infringement of multiple copyrights in the same lawsuit.  *See (1) Twentieth Century Fox Film Corp. et. al. v. Does 1-12*, Case No. 3:04-cv-04862-WHA, (N.D. Cal. 2004), (6 Plaintiffs – 13 songs, see the Complaint at ¶¶ 4-11 and Exhibit A to the Complaint); (2) *Interscope Records, et. al. v. Does 1-25*, 2004 U.S. Dist. LEXIS, Case No. 6:04-cv-197 – ACC- DAB (M.D. Fla. 2004), (16 Plaintiffs and dozens if not hundreds of songs, see the Complaint at ¶¶ 4-19 and Exhibit A to the Complaint); and (3) *BMG Music v. Does 1-203*, Case No. 2:04-cv-00650-CN (E.D.P.A. 2004) (17 Plaintiffs and numerous works, see the Complaint at ¶¶ 4-19 & 23).  Since multiple works were at issue in these copyright cases, the Plaintiffs in those cases did not plead that the online infringements were part of the same transaction or series of transactions or that the defendants in those cases were contributorily liable for each others' infringement.

Defendant's citation to *LaFace Records v. Does 1-38*, 2008 WL 544992 (E.D.N.C. 2008) is also misplaced.  In *LaFace*, eleven recording studios sued over dozens of copyrights.  The only commonality supporting joinder was that the Defendants used Gnutella, a peer-to-peer file sharing protocol.  Significantly, Gnutella works through one peer to one peer transactions; i.e., a user connects to one computer and gets the whole file.  Here, Plaintiff only sued on one copy of one movie which was broken up into pieces by BitTorrent.  And, Plaintiff alleged that the Defendants were distributing the pieces to each other.  Indeed, BitTorrent works differently than Gnutella insofar as it causes all participants in a swarm to upload pieces of the movie to each other.  Consequently, here, Plaintiff pled that each of the Defendants is contributorily liable for the infringement of each of the other Defendants.  This is yet another basis to hold that joinder is proper.

16

F.  <u>Plaintiff Should Not Be Required to Pay Individual Filing Fees for Each Defendant</u>

This Court should not base its decision regarding joinder on the filing fees.  First, as a practical matter, not every Doe Defendant will be identified through discovery.  From Plaintiff's experience, approximately 10% of all Doe Defendants result in a discovery failure when the Internet Service Provider ("ISP") is unable to correlate an IP address with a person.  Second, Plaintiff will often not pursue its claims against many Doe Defendants.  As an example, once receiving discovery Plaintiff will learn that some Doe Defendants are active duty military, elderly, a coffee shop with open wireless, or have some other circumstance that would prevent Plaintiff from pursuing its claims.  This will inevitably reduce the number of Defendants joined together.  Ultimately, if Plaintiff has to pursue each Defendant individually without knowing his or her identity, Plaintiff will be left with less latitude to evaluate cases and make reasonable resolutions including the decision not to prosecute.

Third, it is simply impossible for Plaintiff to pay a filing fee for each individual that infringes its movies on the Internet.  The creators and owners of Patrick Collins, Inc. work tirelessly to create an artistic and unique product, which has evinced a significant demand.  Patrick Collins simply desires to preserve its core business by enforcing its copyrights and protecting its valuable product from theft.  Plaintiff Patrick Collins Inc.'s movie studio, Elegant Angel, which releases the infringed work, had issued 288,899 URL take down notices to Google of illegal copyright infringement on the Internet.[3]

While many sites infringe Plaintiff's copyright, Plaintiff has a specific and very serious problem with sites that provide torrent files for the BitTorrent software.  For these very reasons,

---

[3] See Google's Transparency Report
http://www.google.com/transparencyreport/removals/copyright/owners/7829/Elegant-Angel/

Plaintiff targets these sites for take down notices.[4]  Clearly, if Plaintiff was simply seeking to "extract settlements" as Defendant erroneously suggests, it would not put forth such significant resources into removing access to its movies via the BitTorrent system.  Plaintiff is not filing these suits for any of the improper purposes that Defendant carelessly suggests.  Plaintiff has a very serious problem with copyright infringement and is taking the actions necessary to preserve its copyright to protect its core business.  Consistent with this, other courts have specifically held that Plaintiff has a proper purpose.  *See Patrick Collins, Inc. v. John Does 1-54*, CV-11-1602-PHX-GMS, 2012 WL 911432 (D. Ariz. Mar. 19, 2012) ("the likelihood that John Doe 6 will be subject to such tactics is minimal here; the Court will not conclude based on the tactics of other lawsuits in other districts that this suit was brought for a purely improper purpose.")

Patrick Collins' movies are constantly illegally streamed and made available for download.  Plaintiff faces upwards of 60,000 infringements through BitTorrent per month.  Without these suits, infringers would feel free to take without consequence.  Patrick Collins' goal is to successfully sue the most egregious infringers and at the same time establish a significant deterrent for those tempted to take its products for free.  In the past year Patrick Collins, Inc. has provided the federal judiciary with over $75,000 in federal filing fees, an amount significantly more than many corporations.  Patrick Collins seeks to sue roughly 600 individuals a month, or about one percent of the infringement it faces.  If it were forced to pay filing fees for each defendant, it would face filing fees of over $200,000 a month.  This is simply beyond its financial capabilities as a company.

In order for its litigation to have any deterrent effect, Plaintiff must sue enough people for an individual to have a reasonable belief that if they break the law, they will be penalized.  As

---

[4] 3 of Plaintiff's top 5 sites targeted for infringement are websites that provide torrent files for use on the BitTorrent system.  See *Id.*

the former Register of Copyrights, Mary Beth Peters stated to the Senate Judiciary, "[w]hile we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[5]   Recently, the District Court of Columbia examined the issue of filing fees in copyright infringement cases.  In an evidentiary hearing on the issue of joinder, the major ISPs testified that it is impossible for a copyright holder to protect its copyright without joinder because the filing fees would be too burdensome if a plaintiff is forced to file each suit individually.   "The Movant ISPs acknowledged that the plaintiff would not be able to protect its copyright if the Court were to sever the unknown defendants in this action due to the cost of filing an individual lawsuit for each of the thousands of IP addresses identified as being used for allegedly online infringing activity. Hearing Tr. at 127–28 (Apr. 27, 2012)."   *AF Holdings LLC v. Does 1-1,058*, CIV.A. 12-0048 BAH, 2012 WL 3204917 (D.D.C. 2012).

> Severing the Doe defendants would essentially require the plaintiff to file 1,058 separate cases, pay separate filing fees, and obtain 1,058 separate subpoenas for each of the Listed IP Addresses. This burden for the plaintiff—not to mention the judicial system—would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity. Moreover, such an outcome would certainly not be in the "interest of convenience and judicial economy," or "secure the just, speedy, and inexpensive determination of th[e] action." *Lane,* 2007 WL 2007493, at *7 (declining to sever defendants where "parties joined for the time being promotes more efficient case management and discovery" and no party was prejudiced by joinder).

*Id.* at *13.

The District Court of Colorado also addressed the issue of filing fees in copyright infringement actions and noted that requiring a plaintiff to pay the filing fees for each defendant

---

[5] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks</u> <u>Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u> http://www.copyright.gov/docs/regstat090903.html

limited its ability to protect its rights, contrary to Fed. R. Civ. P. 1. *See Patrick Collins, Inc. v. John Does 1-15*, 11-CV-02164-CMA-MJW, 2012 WL 415436 (D. Colo. 2012).

> If the Court were to sever the Doe Defendants at this juncture, Plaintiff would face significant obstacles in its efforts to protect the Work from copyright infringement, which would only needlessly delay the suit. Furthermore, Plaintiff would need to file individual cases, which would require Plaintiff to pay the Court separate filing fees in each case, further limiting its ability to protect its legal rights. *See* Fed.R.Civ.P. 1 (providing that the Federal Rules of Civil Procedure should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, Plaintiff would be substantially prejudiced by severance.

*Id.* at *3.

Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by increasing the penalties therefore. *See Sony v. Tennenbaum*, 660 F.3d 487, 497 (1st Cir. 2011) (citing the Congressional record and holding that non-commercial individuals commit infringement by distributing copyrighted works online). The Supreme Court has held file sharing of copyrighted works is infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*. 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45 subpoenas may be used to identify online copyright infringers. *See In re Charter Communications, Inc. Subpoena Enforcement Matter*, 393 F.3d 771, 774 (8th Cir. 2005); *Arista Records, LLC. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010). Courts unanimously hold that Plaintiff's First Amendment right under the Petition clause to bring a suit for infringement outweighs any First Amendment right proffered by an alleged infringer. *See e.g., Sony Music Entertainment, inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).

The only way to enforce one's copyrights against online infringement is to bring suits like the one currently before this Court. Requiring copyright holders to pay a filing fee for each individual infringement impermissibly burdens Plaintiff because it cannot bring the petitions that

need to be brought.  Here, Plaintiff would simply be unable to afford even 1% of the individual

actions against infringers each month.  Plaintiff would not be able to effectively deter

infringement.  With out this ability, copyright owners would have a right without a remedy.  Any

such state of affairs would violate Chief Justice Marshall's often cited rule that "the very essence

of civil liberty certainly consists in the right of every individual to claim the protection of the

laws, whenever he received an injury."  *Marbury v. Madison*, 1 Cranch 137, 1803 WL 893, *17

(U.S. 1803).

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject

motion.

Dated: November 16, 2012

Respectfully submitted,
NICOLETTI & ASSOCIATES, PLLC

By:    /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
*Attorney for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to MI R USDCTED LR 5.1(a) I hereby certify that the PLAINTIFF'S MEMORANDUM IN OPPOSITION has been prepared using one of the font and point selections approved by the Court in MI R USDCTED LR 5.1(a)(3). This document was prepared using Times New Roman (12 pt.).

Dated: November 16, 2012

By:      /s/ *Paul J. Nicoletti*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ *Paul J. Nicoletti*