UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PATRICK COLLINS, INC.,

        Plaintiff,

v.

JOHN DOES 1–28,

        Defendants.
_____/

Case Number 12-13670
Honorable Thomas L. Ludington

**OPINION AND ORDER DENYING DEFENDANT ARTHUR GRIFFITHS' MOTION TO QUASH, GRANTING IN PART AND DENYING IN PART DEFENDANT DOE 25'S MOTION TO SEVER AND QUASH, AND GRANTING IN PART AND DENYING IN PART DEFENDANT DOE 26'S MOTION TO SEVER AND QUASH**

BitTorrent is a peer-to-peer file sharing program. The technology is premised on reciprocity. Transfers occur among peers. Everybody uploads data. Or they are out. The data exchange begins when one user uploads a file, which is automatically broken into one-quarter megabyte pieces. As a second user starts to download the pieces, he also automatically begins uploading the pieces he has downloaded to still other users, creating a "swarm."

The question in this copyright infringement action is whether the 28 defendants in a particular swarm are properly joined in a single action. The question has divided the courts, including judges of the Federal District Court for the Eastern District of Michigan. *Compare, e.g.*, *Patrick Collins, Inc. v. John Does 1-21*, 11-15232, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012) (Hood, J.) (concluding that joinder was proper), *with Patrick Collins, Inc. v. John Does 1–23*, 11–CV–15231, 2012 WL 1019034 (E.D.Mich. Mar. 26, 2012) (Steeh, J.) (reaching

opposite conclusion). On the particular facts of this case, this Court concludes that joinder is proper.

**I**

**A**

To examine the particular allegations of copyright infringement in this case, understanding how BitTorrent works is necessary. Before taking up this task, however, some familiarity with the vocabulary of this technology is required:

> *Internet Protocol* (IP): The system of communication standards that ensures that data packets transmitted over the internet reach their intended destinations.[1]
>
> *IP Address*: The unique identifying number of a device connected to the internet.[2]
>
> *Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.
>
> *File*: A collection of related data packets treated as a unit.[3]
>
> *Hash Identifier*: A 40 character alphanumeric string that forms a unique identifier of an encoded file.[4]
>
> *Hypertext Transfer Protocol* (HTTP): A system of communication standards that websites use to communicate with web browsers.[5]
>
> *BitTorrent*: A peer-to-peer file sharing protocol.[6]

---

[1] *See generally Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 163 (E.D. Mich. 2012), *report and recommendation adopted*, 11-15232, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012).

[2] *See generally* Stephanie Crawford, *What is an IP Address?*, HowStuffWorks.com, http://computer.howstuffworks.com/internet/basics/question549.htm (last visited January 29, 2013).

[3] *See generally Patrick Collins*, 282 F.R.D. at 163.

[4] *See generally id*.

[5] *See generally id.*

[6] *See generally Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151, at *1 (E.D. Mich. May 29, 2012); Bram Cohen, *The BitTorrent Protocol Specification*, BitTorrent.org (Feb. 28, 2008), http://www.bittorrent.org/beps/bep_0003.html.

*Peer*: A BitTorrent user.[7]

*Swarm*: A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers — "leechers" and "seeds." It bears reiterating: to constitute a swarm all of the peers must be sharing the same file (identified by its unique hash identifier).[8]

*Initial Seeder*: A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.[9]

*Seed*: A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.[10]

*Leecher*: A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.[11]

*Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).[12]

*Tracker*: A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.[13]

*.Torrent file*: The hub of the BitTorrent system, a *.torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.[14]

---

[7] *See generally Patrick Collins*, 282 F.R.D. at 163.

[8] *See generally* Sean B. Karunaratne, Note, *The Case Against Combating Bittorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283, 289 (2012).

[9] *See generally Patrick Collins*, 282 F.R.D. at 163.

[10] *See generally* Karunaratne, *supra*, at 289.

[11] *See generally* Annemarie Bridy, *Is Online Copyright Enforcement Scalable?*, 13 Vand. J. Ent. & Tech. L. 695, 701 (2011).

[12] *See generally Patrick Collins*, 282 F.R.D. at 163.

[13] *See generally Pac. Century Int'l, Ltd. v. Does 1-48*, C 11-3823 MEJ, 2011 WL 4725243, at *3 (N.D. Cal. Oct. 7, 2011).

[14] *See generally Patrick Collins*, 282 F.R.D. at 164.

*BitTorrent index server*: A server containing a list of *.torrent* files. Essentially a menu of available files, the BitTorrent index server is different from a tracker, which coordinates communication between peers seeking to download the content that the *.torrent* file describes.[15]

**B**

BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content." Sean B. Karunaratne, Note, *The Case Against Combating Bittorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283, 289 (2012). One commentator explains:

> The Napster file-sharing service, which launched the P2P phenomenon, maintained a central server for indexing purposes, but no files were actually stored on or transferred through it. Queries were routed through the central server, which performed a matchmaking function between peers on the network, but the file transfers themselves were unmediated. Subsequent file-sharing systems, including FastTrack (used by Grokster and KaZaA) and Gnutella (used by Morpheus and LimeWire), further decentralized their architectures by eliminating the central indexing server. . . .
>
> Although all of these P2P networks distributed the task of transferring data, enabling every peer to function as both a client and a server, they still suffered from inefficiencies and asymmetries created by free riding. For example, one study of Gnutella found that 70 percent of nodes on the network downloaded content without ever uploading any. From the point of view of scalability, free riding on a P2P network is doubly problematic: Not only does it decrease overall content availability, it also increases the workload for the nodes that do upload content. Free riding thus produces a "tragedy of the digital commons" and effectively transforms a P2P network into a bastardized client-server network, in which some nodes decline to serve any content and act only as clients. The network gets bigger without getting any richer, and its workload is poorly distributed.

---

[15] *See generally What are peers, seeds, torrent, tracker, DHT, Peer Exchange (PEX), and Magnet Links?*, BitComet, http://wiki.bitcomet.com/peers_seeds_torrent_tracker_dht_peer_exchange_pex_magnet_links (last visited January 29, 2013).

> The BitTorrent file-sharing protocol, first released in 2001, solved the problem of P2P free riding quite elegantly — by making it architecturally impossible for any peer on the network to take without giving.

Annemarie Bridy, *Is Online Copyright Enforcement Scalable?*, 13 Vand. J. Ent. & Tech. L. 695, 699–701 (2011) (footnotes and heading omitted).

Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm." *Pac. Century Int'l, Ltd. v. Does 1-48*, C 11-3823 MEJ, 2011 WL 4725243, at *3 n.1 (N.D. Cal. Oct. 7, 2011) (internal citations omitted).

Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:

> 1. Install BitTorrent (or have done so already).
> 2. Surf the web.
> 3. Click on a link to a *.torrent* file.
> 4. Select where to save the file locally, or select a partial download to resume.
> 5. Wait for download to complete.
> 6. Tell downloader to exit (it keeps uploading until this happens).

Bram Cohen, *The BitTorrent Protocol Specification*, BitTorrent.org (June 25, 2009), http://www.bittorrent.org/beps/bep_0003.html, *cited in Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 163–64 (E.D. Mich. 2012), *report and recommendation adopted,* 11-15232, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012).

BitTorrent's key, as noted, is reciprocity — a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the

BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded." Bridy, *supra*, at 702 (footnote omitted).

"In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it." Karunaratne, *supra*, at 289 (quotation marks omitted) (quoting Bridy, *supra*, at 702).

In sum, BitTorrent is a reciprocal, decentralized network — and a tough nut to crack for copyright holders:

> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

Karunaratne, *supra*, at 290 (footnotes, brackets, and quotation marks omitted) (quoting *Diabolic Video Prods., Inc. v. Does 1-2099*, No. 10-CV-5865-PSG, 2011 WL 3100404, at *2 (N.D. Cal. May 31, 2011)). Which brings us to this case.

### C

"Big Wet Asses 21" — the latest installment of the long-running, multiple award-winning series[16] — has been making the rounds on BitTorrent. *See* Compl. ¶ 39. Plaintiff Patrick Collins, Inc., which holds the copyright to the film, wants to put a stop to it. *See id*. ¶ 11. And so Plaintiff hired a forensic investigator: IPP, Limited. *Id*. ¶ 36.

---

[16] *See generally Big Wet Asses*, Wikipedia.com (last visited January 29, 2013), http://en.wikipedia.org/wiki/Big_Wet_Asses.

IPP tracked the IP addresses that were transmitting pieces of Plaintiff's work, identifying 28 IP addresses that were transmitting the same torrent file (identified by the unique hash number 54F2C047DD097C5DC94145C6C2B98D4AE9780F7). *Id*. ¶¶ 37–40.

Plaintiff's complaint alleges that "each of the Defendant's computers used their identified IP addresses to connect to [IPP's] investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of [a particular digitial copy of Plaintiff's work] identified by the Unique Hash Number." *Id*. ¶ 40. The complaint further alleges that "IPP's agent analyzed each BitTorrent 'piece' distributed by each IP address . . . and verified that re-assemblage of the pieces using a BitTorrent Client results in fully playable digital motion picture of the Work." *Id*. ¶ 41.

Each IP address belongs to a person located in Michigan — and the Eastern District of Michigan at that. *Id*. Ex. A. The first "hit date" (the first time IPP received a piece from a defendant's IP address) was June 24, 2012. *Id*. The final, August 5, 2012. Pertinent to the motions now before the Court, Exhibit A of the complaint alleges that five defendants transmitted pieces of the work (with the same hash) to Plaintiff's investigator, IPP, on June 24, 2012. *Id*. On June 25, a sixth defendant did. *Id*. On June 26, three more defendants did — and among them was Doe 26 (one of the two defendants moving to sever and quash). *Id*. On June 27, yet another defendant did. *Id*. On June 28, two more defendants did — and among them was Doe 25 (the second of the two defendants moving to sever and quash). *Id*. On June 29, yet another defendant did. *Id*. And so it went through August 5, 2012.

**D**

On August 19, 2012, Plaintiff filed a complaint against John Does 1–28. ECF No. 1. Alleging both direct and contributory copyright infringement, the complaint asserts that joinder

is proper because "(a) each of the Defendants is jointly and severally liable for the infringing activities of the other Defendants, and (b) the infringement complained of herein by each of the Defendants was part of a series of transactions involving the exact same torrent file containing Plaintiff's copyrighted [work], and was accomplished by the Defendants acting in concert with each other, and (c) there are common questions of law and fact; indeed, the claims against each of the Defendants are identical." Compl. ¶ 10.

The same day, Plaintiff moved for leave to file third-party subpoenas on internet service providers to learn the identity of the IP address account holders. ECF No. 2. On August 31, 2012, the motion was granted. ECF No. 4.

On October 18, 2012, Doe 25 moved to sever his case from the case against other 27 defendants and quash the subpoena. ECF No. 8. About two weeks later, Doe 26 likewise moved to both sever his case and quash the subpoena. ECF No. 17. And finally, one of the 28 IP address account holders, Arthur Griffiths, chose to shed the cloak of anonymity and respond to Plaintiff's allegations. ECF No. 5. The gentleman filed a "motion to quash subpoena" (which is substantively a motion to dismiss the complaint for not stating a claim on which relief can be granted). The motions to sever are taken up first.

## II

### A

Federal Rule of Civil Procedure 21 provides that "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "When considering a motion to sever under Rule 21, courts have looked to Rule 20 for guidance." *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012) (quotation marks omitted) (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)).

Federal Rule of Civil Procedure 20 provides that persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Thus, to join defendants in a single action the "two independent requirements of Rule 20" must be met: (1) the claims against them must be asserted 'with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences,' and (2) there must be a 'question of law or fact common to all defendants.' " *In re EMC Corp.*, 677 F.3d at 1356 (quoting Fed. R. Civ. P. 20(a)(2)).

The "transaction-or-occurrence" test of Rule 20(a)(2) "is similar to the transaction-or-occurrence test of Rule 13(a) for compulsory counterclaims, which has been construed as requiring a 'logical relationship' between the claims." *In re EMC Corp.*, 677 F.3d at 1357–58 (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)).

The "logical relationship" test, in turn, "is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant. In other words, the defendants' allegedly infringing acts, which give rise to the individual claims of infringement, must share an aggregate of operative facts." *In re EMC Corp.*, 677 F.3d at 1358 (citing *United States v. Mississippi*, 380 U.S. 128, 142–43 (1965)).

And when in doubt, the Supreme Court instructs, join. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). That is, "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.*; *see also LASA Per L'Industria Del*

*Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) ("The words 'transaction or occurrence' are given a broad and liberal interpretation.").

By its express terms, moreover, "Rule 20 clearly contemplates joinder of claims arising from a 'series of transactions or occurrences' — a single transaction is not required." *In re EMC Corp.*, 677 F.3d at 1356 (quoting Fed. R. Civ. P. 20(a)(2)).

**B**

As noted, whether membership in a BitTorrent swarm satisfies the requirements of Rule 20(a)(2) has split the federal district courts (including judges of the Federal District Court for the Eastern District of Michigan). *Compare, e.g.*, *Patrick Collins, Inc. v. John Does 1-21*, 11-15232, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012) (Hood, J.) (concluding that joinder was proper and therefore denying a motion to sever), *with Patrick Collins, Inc. v. John Does 1–23*, 11–CV–15231, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) (Steeh, J.) (reaching opposite conclusion); *see generally Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 165 (E.D. Mich. 2012) (collecting cases), *report and recommendation adopted,* 11-15232, 2012 WL 4498373 (E.D. Mich. Sept. 28, 2012). This is, of course, a fact-intensive inquiry. As applied to the allegations in this case, however, those courts answering this question in the affirmative have the stronger argument.

**1**

The first requirement for joinder, as noted, is that the claims against each defendant arise from a "series of transactions or occurrences" having a "logical relationship." *E.g.*, *In re EMC Corp.*, 677 F.3d at 1357–58. The allegations in the complaint satisfy this test. As Magistrate Judge Randon cogently observed when presented with a similar set of allegations,

> If Plaintiff['s] allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:
>
> 1) the Defendant connected to and transferred a piece of the Movie from the initial seeder; or
>
> 2) the Defendant connected to and transferred a piece of the Movie from a seeder who downloaded the completed file from the initial seeder or from other peers; or
>
> 3) the Defendant connected to and transferred a piece of the Movie from other Defendants who downloaded from the initial seeder or from other peers; or
>
> 4) the Defendant connected to and transferred a piece of the Movie from other peers who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.
>
> In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.
>
> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

*Patrick Collins*, 282 F.R.D. at 165 (emphasis omitted); *see also, e.g.*, *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011) (finding logical relationship because each defendant "may be responsible for distributing the motion pictures to the other putative defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material").

Or, as another district court pithily put the point, "[I]t is difficult to see how the sharing and downloading activity alleged in the Complaint — a series of individuals connecting either

directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file — could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a)." *Digital Sin, Inc. v. Does 1–176,* 279 F.R.D. 239, 244 (S.D.N.Y.2012) (emphasis in original).

### 2

The second requirement for joinder, "common questions of law or fact, is easily met because the claims asserted against each John Doe Defendant are identical." *W. Coast Productions, Inc. v. Does 1-5829*, 275 F.R.D. 9, 16 (D.D.C. 2011).

Because Plaintiff's complaint satisfies the requirements of Rule 20, the motions to sever will be denied.

### 3

Other courts (and other judges within this district), it must be acknowledged, have reached different a conclusion on the same basic question. In *Patrick Collins, Inc. v. John Does 1–23*, 11–CV–15231, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) (Steeh, J.), for example, the court concluded that joinder was improper, finding no "reason to conclude that the Doe defendants were engaged in the same transaction or series of transactions." *Id*. at 4. The court explained:

> That plaintiff has provided evidence that each of the defendants connected to the investigative server to download a piece of the Work does not show that each of the IP addresses acted in concert with all the other addresses in the swarm. . . .
> 
> In addition, plaintiff's complaint is devoid of any information concerning the number of users in the swarm involved, which easily can reach numbers in the hundreds of thousands. The nature of the BitTorrent protocol enables its users to share files in a relatively quick time frame, ranging anywhere from fifteen minutes to a few hours. The absence of information concerning the number of total users in the swarm, coupled with the BitTorrent protocol's ability to quickly share files further demonstrates that it is implausible that any of the Doe defendants were simultaneously sharing pieces of plaintiff's Work. Thus, the

> absence of any allegations that a particular user downloaded a piece of the Work from, or uploaded a piece of the Work to, another user in the swarm highlights the absence of any reason to conclude that the Doe defendants were engaged in the same transaction or series of transactions.

*Id.* (citation omitted) (citing *Hard Drive Prods., Inc. v. Does 1–188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011)); *see generally* Karunaratne, *supra*, at 294 ("Just because defendants were part of the same swarm does not mean that they were collaborating with all other members of the swarm. Merely participating in a common swarm does not establish that any one defendant provided bits of the infringed file to all other defendants in that swarm." (footnote omitted)).

As a technical matter, it is correct that simply because two defendants were members of the same swarm does not demonstrate that they "were simultaneously sharing pieces of plaintiff's Work." Joinder under the federal rules, however, does not require simultaneity — "concerted action is not required for joinder." *Patrick Collins*, 282 F.R.D. at 168. Rather, joinder requires a series of transactions or occurrences having a "logical relationship." *In re EMC Corp.*, 677 F.3d at 1357–58.

Under BitTorrent's file sharing protocol, as noted, "even after a Doe Defendant disconnects from the swarm, the parts of the file that he downloaded and uploaded will continue to be transferred to other Doe Defendants remaining in the swarm." *OpenMind Solutions, Inc. v. Does 1-39*, C 11-3311 MEJ, 2011 WL 4715200, at *6–7 (N.D. Cal. Oct. 7, 2011) (citations omitted) (citing *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004)). Judge Randon explains:

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day

one, would have uploaded the Movie to another Defendant or peer six weeks later.

*Patrick Collins*, 282 F.R.D. at 168. Moreover, as Magistrate Judge Michelson explained when confronted with a similar argument by a doe defendant:

> [T]he Court agrees with Defendant that it is unlikely that any defendant in this case *directly* shared a piece of the work with another defendant. . . . But it is important to consider that while a peer directly uploads to only a small number of peers, those peers in turn upload pieces to other peers that later join the swarm. Thus, a defendant's 'generation' of peers — peers that a defendant likely directly uploaded to — helped pass on pieces of the Work to the next 'generation' of active peers. For example, it is not implausible that John Doe No. 10, who apparently participated in the swarm on July 18, 2011, shared pieces of the Work with peers that in turn, helped propagate the Work to later joining peers. Therefore, Doe No. 10 plausibly *indirectly* uploaded pieces of the work to, say, Doe No. 25 who participated in the swarm four days later.

*Third Degree Films v. Does 1-36*, 11-CV-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012).

Here, the complaint alleges that five defendants transmitted pieces of the work (with the same hash) to Plaintiff's investigator, IPP, on June 24, 2012. On June 25, a sixth defendant did. On June 26, three more defendants did — and among them was Doe 26 (one of the two defendants moving to sever). On June 27, yet another defendant did. On June 28, two more defendants did — and among them was Doe 25 (the second of the two defendants moving to sever). On June 29, yet another defendant did. And so it went. Because these events constitute a "series of transactions or occurrences" for purposes of Rule 20(a)(2), the motions to sever will be denied.

### III

Arthur Griffiths, Doe 25, and Doe 26 each move to quash the subpoenas issued to their service providers.

**A**

Arthur Griffiths, as noted, has filed a document titled "motion to quash subpoena." ECF No. 5. Although titled a motion to quash, substantively it is a motion to dismiss. He writes that he is an 83-year-old "with limited computer skills" and "a wireless home network with no security provisions." Griffith's Mot. to Quash 1. (He does not assert, however, that he did not in fact download or upload Plaintiff's work.) He writes: "This action represents a miscarriage of justice and represents an effort to obtain a settlement from individuals to which the plaintiff is not entitled. I ask this court to find as . . . various other Federal judges have found and dismiss this case." *Id*. Mr. Griffiths supports his motion with a copy of an article from *Time* magazine, but no other evidence. See id. Ex. A (attaching copy of Keith Wagstaff, *You are not an IP Address, Judge Rules*, Time.com (May 7, 2012)).

Effectively, Mr. Griffiths is moving to dismiss the complaint against him for not stating a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Yet accepting the allegations in the complaint as true, as this Court must on a Rule 12(b)(6) motion, the complaint states a prima facie case of copyright infringement.

Section 106 of the Copyright Act provides that "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of the ownership, or by rental, lease, or lending." 17 U.S.C. § 106.

To plead a prima facie case of copyright infringement of a motion picture, a plaintiff must allege that : (1) it owns a valid copyright in the motion picture; and (2) the defendants violated one or more of the exclusive rights granted the plaintiff in 17 U.S.C. § 106 by copying

or distributing the plaintiff's copyrighted motion picture without authorization. *Columbia Pictures Indus., Inc. v. T & F Enterprises, Inc.*, 68 F. Supp. 2d 833, 837 (E.D. Mich. 1999) (citing *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985)).

Here, the complaint alleges both elements. Paragraph 11 alleges that Plaintiff owns a copyright "for the motion picture entitled 'Big Wet Asses 21' (the 'Work')." Paragraphs 33 through 51 allege that Defendants violated the exclusive rights granted Plaintiff in 17 U.S.C. § 106 by copying and distributing Plaintiff's copyrighted motion pictures without Plaintiff's authorization.

Mr. Griffiths' motion to quash must be denied.

### B

Does 25 and 26 have also filed motions to quash. In contrast to Mr. Griffiths, however, their motions are true to their titles.

### 1

Federal Rule of Civil Procedure 45(c)(3) enumerates four situations in which a court "must" either modify or quash a subpoena and three situations in which a court "may."

First, subsection (a) provides that a court "must modify or quash a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. (c)(3)(a).

Subsection (b), in turn, provides that a court "may" modify or quash a subpoena that requires "(i) disclosing a trade secret or other confidential research, development, or commercial information; (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or (iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial." Fed. R. Civ. P. (c)(3)(b).

**2**

Doe 26 tersely asserts that the subpoena issued to the internet service provider should be quashed because Doe 26 "was improperly joined to this litigation." Doe 26's Mot. to Sever and Quash 12. (Doe 26 does not put forward any other basis for quashing the subpoena.) Alternatively, Doe 26 seeks leave to proceed anonymously at present.

For the reasons discussed above, joinder of Doe 26 was proper. Doe 26's argument that the subpoena should be quashed lacks merit.

Doe 26's alternative argument, in contrast, has some merit. As an initial matter, Plaintiff writes that it "does not object to a protective order that would enable Defendant to proceed anonymously and prevent Plaintiff from publically naming Defendant until after discovery is conducted." Pl.'s Resp. to Doe 26's Mot. 5.

And on independent review, moreover, permitting the defendants to proceed anonymously for a limited time is reasonable. *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) (noting that a protective order was appropriate "for a limited duration" because "[the] risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having

their names publicly associated with allegations of illegally downloading [pornography]" (quotation marks omitted)).

As another district court observed when issuing a limited protective order in a similar case, such an order is reasonable "because the ISP subscribers may be innocent third parties, the subject matter of the suit deals with sensitive and personal matters, and the jurisdictional and procedural complications might otherwise dissuade innocent parties from contesting the allegations."); *Digital Sin, Inc. v. Does 1-5698*, C 11-04397 LB, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011) *but see Patrick Collins, Inc. v. John Does 1–54*, No. 11–1602, 2012 WL 911432, at *4 (D. Ariz. Mar.19, 2012) ("Defendant claims he would prefer that the proceedings take place under seal, but offers no reason that disclosing the fact that a particular IP address is associated with his name constitutes annoyance, embarrassment, oppression, or undue burden. Although the Court acknowledges that there is some social stigma attached to consuming pornography, Defendant strenuously denies the allegations, and it is the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove. The nature of the allegations alone do not merit a protective order.").

Accordingly, the parties will be permitted to submit a proposed protective order permitting defendants to proceed anonymously for a limited duration. The subpoena issued to Doe 26's service provider, however, will not be quashed.

**2**

Doe 25 moves to quash the subpoena because of the stigma attached to being named as defendant in a case of this type. "The lawsuit itself creates a lasting stigma based on the fact that his/her name will be forever associated with the downloading of this work. . . . Effectively, suits like this transform those with legitimate defenses into immediate losers." Doe 25's Mot. to

Sever and Quash 12. Alternatively, Doe 25 also seeks leave to proceed anonymously. Again, Plaintiff does not oppose a limited protective order.

A protective order permitting the defendants to proceed anonymously would moot Doe 25's reputational concern, for now. And given the reputational risks, coupled with the risk of false positives, the Court concludes that such an order is reasonable. But again, the subpoena issued to Doe 25's service provider will not be quashed.

### IV

Accordingly, it is **ORDERED** that Defendant Arthur Griffiths' motion to quash (ECF No. 5) is **DENIED**.

It is further **ORDERED** that Defendant John Doe 25's motion to sever and quash (ECF No. 8) is **DENIED IN PART AND GRANTED IN PART**. Defendant's case will not be severed. The subpoena will not be quashed. Defendant may, however, submit a proposed limited protective order.

It is further **ORDERED** that Defendant John Doe 26's motion to sever and quash (ECF No. 17) is **DENIED IN PART AND GRANTED IN PART**. Defendant's case will not be severed. The subpoena will not be quashed. Defendant may, however, submit a proposed limited protective order.

Dated: January 29, 2013

                                  s/Thomas L. Ludington
                                  THOMAS L. LUDINGTON
                                  United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney party of record herein by electronic means and upon Charles E. Griffiths at 308 Beverly Island Drive, Waterford, MI 48323 by first class U.S. mail on January 29, 2013.

                        s/Tracy A. Jacobs
                        TRACY A. JACOBS